The STATE of Ohio, Appellee,

v.

TARBAY, Appellant.

[Cite as *State v. Tarbay*, 157 Ohio App.3d 261, 2004-Ohio-2721.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030619.

Decided May 28, 2004.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Chief Assistant Prosecuting Attorney, for appellee.

Catherine Adams, for appellant.

HILDEBRANDT, Judge.

{¶ 1} Defendant-appellant Thomas Tarbay appeals from the trial court's judgment convicting him on five counts of importuning, in violation of R.C. 2907.07(E)(2), and one count of attempted unlawful sexual conduct with a minor, in violation of R.C. 2923.02(A), and sentencing him to three years of community control.

{¶ 2} In March 2003, Tarbay, a 48–year–old man, engaged in discussions concerning sexual activity in an Internet chat room with a Hamilton County deputy sheriff who was posing as a minor female. Specifically, on March 20 and 24, 2003, Tarbay began on-line conversations with a girl he thought was 13 years old. Tarbay was actually chatting with the undercover sheriff's deputy. During those conversations, Tarbay solicited the "girl" to engage in sexual activity. On March 20, 26, and 27, 2003, Tarbay began Internet conversations with a "girl" he believed was 15 years old. Again, Tarbay was actually communicating with the undercover deputy. During each of the conversations, Tarbay solicited the "girl" to engage in sexual activity. During the last conversation with the "girl," Tarbay arranged to meet "her" at a Hamilton County motel. When Tarbay arrived at the motel, he was arrested.

{¶ 3} Tarbay was charged with five counts of importuning and one count of attempted unlawful sexual conduct with a minor. Prior to trial, Tarbay moved to dismiss the charges. The trial court denied the motion. Eventually Tarbay entered no-contest pleas to each count. The trial court accepted the pleas and found him guilty as charged. The court sentenced Tarbay to three years of community control and, as a condition of community control, ordered Tarbay to serve 180 days in the Hamilton County Justice Center. Tarbay now appeals, bringing forth two assignments of error.

{¶ 4} In his first assignment of error, Tarbay argues that the trial court erred in denying his motion to dismiss. Tarbay's first argument pertains to the importuning charges. Tarbay maintains that R.C. 2907.07(E)(2) is unconstitutional on its face and as applied to him because it infringes upon the right of free speech guaranteed under the First Amendment to the United States Constitution. We disagree.

{¶ 5} R.C. 2907.07(E)(2), which has now been renumbered R.C. 2907.07(D)(2), provides that "[n]o person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and * * * [t]he other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age."

{¶ 6} Tarbay argues that this part of the importuning statute is facially invalid under the First Amendment because it is an impermissible content-based limitation on speech. The state argues that R.C. 2907.07(E)(2) is facially valid because the statute's prohibitions do not regulate protected speech, but if the statute did regulate protected speech, then the statute is narrowly tailored to serve the state's compelling interest in protecting children from being solicited for sexual activity with an adult.

{¶ 7} Preliminarily, we note that there is a strong presumption that legislative enactments are constitutional.[1] "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."[2] A statute may be considered overbroad, and thus in violation of the First Amendment, if "[it] prohibits constitutionally protected conduct."[3] But even speech protected by the First Amendment can be regulated if the state has a compelling reason, and if the statute is narrowly tailored to achieve the state's interest.[4]

---

1. *State v. Collier* (1991), 62 Ohio St.3d 267, 581 N.E.2d 552.

2. *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

3. *State v. Phipps* (1979), 58 Ohio St.2d 271, 273, 12 O.O.3d 273, 389 N.E.2d 1128.

4. Id., 58 Ohio St.2d at 276, 12 O.O.3d 273, 389 N.E.2d 1128.

{¶ 8} In *State v. Snyder*,[5] a case factually similar to the one at bar, the Third Appellate District held that R.C. 2907.07(E)(2) did not violate the First Amendment because the statute was narrowly construed so as to apply only to unprotected speech. In *Snyder*, a police officer posing as a 14–year–old girl made contact over the Internet with a 36–year–old man. After several conversations describing sexual activities that the man wanted to engage in with the girl, a meeting was arranged. When the adult male appeared for the meeting, he was arrested and charged with importuning.

{¶ 9} In considering the First Amendment challenge, the Third Appellate District first determined that R.C. 2907.07(E)(2) could possibly apply to speech protected by the First Amendment. "R.C. 2907.07(E)(2) makes criminal the act of soliciting a law enforcement officer to engage in sexual activity if the offender believes, or is reckless in that regard, that the law enforcement officer is thirteen years of age or older but less than sixteen years of age. The First Amendment does protect two adults communicating about and soliciting sexual activity."[6] But the Third Appellate District concluded that the state had a compelling interest in protecting minors from unlawful sexual activity. We agree. "The United States Supreme Court has recognized that there is a compelling interest in protecting the physical and psychological well-being of minors, which extends to shielding minors from influences that are not obscene by adult standards."[7] The Third Appellate District also concluded that the importuning statute was narrowly tailored to achieve the state's interest and did not have a "chilling effect" on speech, "because the offender would have to believe that he is soliciting a minor for sexual activity, a criminal act, before his conduct would be regulated by R.C. 2907.07(E)(2)."[8] Finally, the Third Appellate District observed that R.C. 2907.07(E)(2) did not restrict any more conduct or speech than was necessary to achieve the state's interest.[9] Notably, the statute did not restrict "adults and minors from communicating about sex" or "speech about adults engaging in sexual conduct with minors"; it only prohibited "speech that solicits minors to engage in illegal sexual activity with adults."[10]

---

5.  155 Ohio App.3d 453, 2003-Ohio-6399, 801 N.E.2d 876.

6.  Id. at ¶ 19.

7.  Id. at ¶ 20, citing *Sable Communications of California, Inc. v. Fed. Communications Comm.* (1989), 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93.

8.  Id. at ¶ 28.

9.  Id. at ¶ 29.

10.  Id.

{¶ 10} We agree with the Third Appellate District's reasoning and conclusion and hold that R.C. 2907.07(E)(2) is not facially invalid on First Amendment grounds. We note that the Second Appellate District has also reached the same conclusion about a similar First Amendment challenge based on the reasoning in *Snyder*.[11]

{¶ 11} Tarbay, citing *Ashcroft v. Free Speech Coalition*,[12] argues that R.C. 2907.07(E)(2) is not narrowly tailored to serve the legislature's stated interest in protecting minors from the significant potential for psychological and physical harm involved in adult solicitations to engage in illegal sexual activity, because there is no real minor involved to protect from harm.

{¶ 12} In *Ashcroft*, the Supreme Court clarified the scope of governmental power to regulate child pornography. The court held provisions of the Child Pornography Prevention Act of 1996 ("CPPA"), which criminalized the production and possession of "sexually explicit images that appear to depict minors but were produced without using any real children," to be in violation of the First Amendment.[13] Because *New York v. Ferber's* [ (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113] rationale for classifying child pornography as unprotected speech relied upon the government's interest in protecting children harmed in the production process, the CPPA's criminalization of pornography that did not involve the exploitation of actual children was unconstitutionally overbroad. Although the government advanced several arguments, including that a pedophile could potentially use the images to engage minors in sexual activity, linking "virtual" child pornography with the protection of children, the Supreme Court found any link to be too attenuated. Finally, because the statute did not contain an exception for speech with "serious literary, artistic, political, or scientific value," it could not ban "virtual" child pornography as obscene under the *Miller v. California* [ (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419] analysis.[14]

{¶ 13} *Ashcroft* is distinguishable from the case at bar. In *Ashcroft*, the court based its opinion on its view that certain provisions of the CPPA violated the First Amendment because they prohibited the dissemination of *protected* speech, i.e., the expression of ideas. Essentially, the court held that some "virtual child pornography" could be protected speech. Thus, unlike the provisions in *Ashcroft*, the importuning statute here is aimed not at preventing the expression of ideas but at "prohibiting adults from taking advantage of minors and the anonymity

---

11.  See *State v. Turner*, 156 Ohio App.3d 177, 2004-Ohio-464, 805 N.E.2d 124.

12.  535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403.

13.  Id. at 250–252, 122 S.Ct. 1389, 152 L.Ed.2d 403.

14.  Id. at 246–247, 122 S.Ct. 1389, 152 L.Ed.2d 403.

and ease of communicating through telecommunications devices, especially the Internet and instant messaging devices, by soliciting minors to engage in sexual activity." [15]   R.C. 2907.07(E)(2) regulates conduct—soliciting a child to engage in sex acts—that is not protected by the First Amendment. [16]   It does not regulate any type of protected speech as the CPPA attempted to do.

{¶ 14} Second, the rationale set forth by the government in *Ashcroft*, that there was the attenuated potential at some unspecified time in the future that a hypothetical pedophile might use the material considered protected speech to arouse himself or to improve his chances of engaging in sexual activity with a child, is not present in the case at bar.   Here, the immediate potential for a person to use the anonymity of the Internet and unprotected speech to directly solicit a minor to engage in illegal sexual activity is very significant.   The harm to children was prevented in this case by the "sting" operation.   It was fortunate that Tarbay was communicating with an undercover officer whom he only believed was a minor but who was not an actual minor.   It appears that the importuning statute served its purpose by preventing harm to a minor. [17]

{¶ 15} Tarbay also seems to argue that the importuning statute is not narrowly tailored to serve the state's interest, because it applies only to an adult offender who is four years older than the age assumed by the officer posing as a minor. We believe that it is reasonable for the state to find that the impact of a direct solicitation for sex on an adolescent from a much older adult is more damaging than such a solicitation from a person closer in age. [18]   The older adult is more likely to be more sophisticated and better able to coerce or overcome the resistance of a minor.

{¶ 16} Because R.C. 2907.07(E)(2) is narrowly tailored to serve the government's compelling interest, we hold that it is constitutional on its face and as applied to Tarbay.   We note that our holding is in line with United States Supreme Court precedent, which has rejected the contention that the First Amendment extends to speech that is incidental to or part of a course of criminal conduct, i.e., soliciting a minor child for sex. [19]

---

**15.**   See *Snyder* at ¶ 19.

**16.**   See *United States v. Bailey* (C.A.6, 2000), 228 F.3d 637, 639 (there is no First Amendment right to attempt to persuade minors to engage in illegal sex acts).

**17.**   See *State v. Bolden*, 2d Dist. No. 19943, 2004-Ohio-2315, 2004 WL 1043317, ¶ 37 (R.C. 2907.07[E][2] is narrowly tailored to serve the interest of the state in promoting the welfare of children).

**18.**   See *State v. Bailey*, 1st Dist. No. C–010641, 2002-Ohio-3133, 2002 WL 1343466, at ¶ 26.

**19.**   *Giboney v. Empire Storage* (1949), 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834.

{¶ 17} Finally, Tarbay raises the argument that R.C. 2907.07(E)(2) punishes mere thought. But, as noted above, the importuning statute does not prohibit an adult and child from communicating about sex, nor does it prevent two people, regardless of their age, from talking about sexual activity between a child and an adult. R.C. 2907.07(E)(2) criminalizes only the solicitation of a minor, or someone the offender believes to be a minor, to engage in illegal sexual activity with an adult. Tarbay was not convicted of importuning because he was thinking about having sex with a minor; he was convicted for his intent to solicit a person he believed to be a minor to engage in sex acts with him. "[T]he harm is in the asking," [20] not the discussion of it. In sum, we reiterate that there is simply "[no] First Amendment right to attempt to persuade minors to engage in illegal sex acts." [21]

{¶ 18} Next, Tarbay argues that the charge of attempted unlawful sexual conduct with a minor should have been dismissed because simply driving to the hotel where Tarbay had arranged to meet the 15–year–old girl was not a substantial step in the commission of the offense. We disagree.

{¶ 19} Initially, we note that Tarbay entered a no-contest plea to the charge of attempted unlawful sexual conduct with a minor. By pleading no contest, Tarbay admitted to the truth of the facts alleged in the indictment.[22] Those facts were that Tarbay "knowingly engaged in conduct which, if successful, would have constituted or resulted in the offense of unlawful sexual conduct with a minor." At the plea hearing, the prosecutor read into the record that Tarbay had made arrangements to meet a person he believed to be a 15–year–old girl at the Red Roof Inn in Blue Ash, Ohio, for the purpose of sexual activity, and that on March 27, 2003, Tarbay drove from Columbus, Ohio, to the arranged location.

{¶ 20} "A 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." [23] A substantial step involves conduct that is "strongly corroborative of the actor's criminal purpose." [24]

---

20. *State v. Bolden*, 2d Dist. No. 19943, 2004-Ohio-2315, 2004 WL 1043317, ¶ 37.

21. See *United States v. Bailey* (C.A.6, 2000), 228 F.3d 637, 639.

22. *State v. Bird* (1998), 81 Ohio St.3d 582, 692 N.E.2d 1013.

23. *State v. Woods* (1976), 48 Ohio St.2d 127, 357 N.E.2d 1059.

24. Id.

{¶ 21} In *State v. Schaefer*,[25] the Second Appellate District held that the defendant's act of driving to meet a person whom he believed was a 14–year–old girl he had solicited over the Internet for the purpose of engaging in sexual activity was a substantial step in the commission of the offense of unlawful sexual conduct with a minor, and that the act of driving to the arranged meeting spot on the date and time planned was strongly corroborative of his criminal purpose.[26]

{¶ 22} Likewise, Tarbay's act of driving to an arranged meeting place, the Red Roof Inn, on the date that he had agreed to meet a 15–year–old girl for the purpose of engaging in the sexual activity that they had discussed on the Internet was strongly corroborative of Tarbay's specific intent to engage in sexual activity with a minor, and it thereby constituted a substantial step in committing the offense of unlawful sexual conduct with a minor. Accordingly, the trial court did not err in refusing to dismiss the charge of attempted unlawful sexual conduct with a minor.

{¶ 23} In sum, because R.C. 2907.07(E)(2) is not invalid facially or as applied on First Amendment grounds, and because Tarbay took a substantial step in the commission of the offense of unlawful sexual conduct with a minor by driving to a hotel on an arranged date, we hold that the trial court did not err in denying Tarbay's motion to dismiss. The first assignment of error is overruled.

■ {¶ 24} In his second assignment of error, Tarbay maintains that the trial court abused its discretion in imposing jail time as a condition of community control, when none of the factors under R.C. 2929.14(B) warranting a prison sentence was present. We disagree.

{¶ 25} A trial court has broad discretion in sentencing a defendant, and a reviewing court will not alter the sentence unless the trial court has abused its discretion.[27] An abuse of discretion amounts to more than a mere error of judgment; it implies that the trial court's decision was arbitrary, unreasonable, or unconscionable.[28]

{¶ 26} R.C. 2929.16 governs the imposition of community control. R.C. 2929.16(A) states that an offender who is not subject to a mandatory prison term may be required to submit to any "community residential sanction or combination of community residential sanctions." There are no set guidelines for determining which sanction or combination of sanctions should be imposed. We note that

25. 155 Ohio App.3d 448, 2003-Ohio-6538, 801 N.E.2d 872.

26. Id. at ¶ 14.

27. *State v. Yontz* (1986), 33 Ohio App.3d 342, 343, 515 N.E.2d 1012.

28. *State ex rel. Lee v. Montgomery* (2000), 88 Ohio St.3d 233, 235, 724 N.E.2d 1148.

R.C. 2929.16(A)(1) does permit a trial court to impose a community-control sanction that includes a "term of up to six months at a community-based correctional facility that serves the county."

{¶ 27} We hold that the trial court did not abuse its discretion in sentencing Tarbay to 180 days in the Hamilton County Justice Center, a community-based correctional facility, in light of the fact that Tarbay stood convicted of six separate felony offenses. We note that R.C. 2929.14(B) requires a trial court to make statutory findings only before imposing a prison sentence that is served in a facility governed by the Department of Correction. Serving time in a local jail as part of a community-control sanction is not the same as a prison sentence.[29] Accordingly, the trial court did not have to rely upon any of the factors in R.C. 2929.14(B) before imposing Tarbay's jail sentence. The second assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

WINKLER, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring separately.

{¶ 28} More than a century before the advent of the Internet, a wise man observed, "The life of the law has not been logic: it has been experience."[30] Logic might flinch at the criminalization of conversation with an adult *posing* as a child. But experience teaches that this law is necessary; it is almost impossible otherwise to catch those who would prey sexually upon children. Logic must sometimes yield to what experience has shown to be necessary.

---

29. *State v. Williams*, 2d Dist. No. 19026, 2002-Ohio-2908, 2002 WL 1332912.

30. Holmes, The Common Law (1881) 1.